UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FRED L. PERRY,

        Plaintiff,

v.

PACKERLAND RENT-A-MAT INC.,
MICHAEL SCHULTZ, and JOHN OTT,

        Defendants.

Case No. 22-CV-279-JPS

**ORDER**

On March 4, 2022, Plaintiff Fred L. Perry ("Plaintiff"), proceeding pro se, filed this action alleging that Defendants Packerland Rent-A-Mat, Inc. ("Packerland"), Michael Schultz ("Schultz"), and John Ott ("Ott") (collectively, "Defendants") violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. §§ 621–634. ECF No. 1. Plaintiff also filed a motion for leave to proceed without prepaying the filing fee, ECF No. 2. This Order screens Plaintiff's complaint and addresses his motion for leave to proceed without prepaying the filing fee.

1.   **MOTION TO PROCEED IN FORMA PAUPERIS**

On the question of indigence, although Plaintiff need not show that he is totally destitute, *Zaun v. Dobbin*, 628 F.2d 990, 992 (7th Cir. 1980), the privilege of proceeding *in forma pauperis* "is reserved to the many truly impoverished litigants who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them," *Brewster v. N. Am. Van Lines, Inc.*, 461 F.2d 649, 651 (7th Cir. 1972).

In his motion, Plaintiff avers that he is unemployed and, although he is married, he does not know whether his wife is employed, which suggests estrangement. ECF No. 2 at 1. He has no dependents and no other sources of income. *Id.* at 1–2. He estimates that his total monthly expenses tally up to $400, which include household expenses and car-related expenses. *Id.* at 2–3. It appears that he receives food assistance. *Id.* at 2. He owns two cars, each valued under one thousand dollars, and does not own any other assets. *Id.* at 3. The Court accepts that Plaintiff is indigent. However, the inquiry does not end there; the Court must also screen the action.

**2.     SCREENING STANDARDS**

Notwithstanding the payment of any filing fee, when a plaintiff requests leave to proceed *in forma pauperis*, the Court must screen the complaint and dismiss it or any portion thereof if it raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a

speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (internal citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678) (internal bracketing omitted).

### 3. RELEVANT ALLEGATIONS

In July 2015, Plaintiff began working part-time for the carpet-cleaning department of Packerland, a mat rental company. He had considerable prior experience and successfully trained two younger employees. Due to Plaintiff's efforts, the company recouped business they had previously lost. In September 2015, Packerland hired Plaintiff full time. In March 2016, Ott became Plaintiff's manager. By this time, Plaintiff had been working at the company for nearly ten months with zero complaints.

After Ott's promotion, Plaintiff noticed that the young white employees at Packerland—some of whom he had trained—were doing less work and "milking the clock." ECF No. 1-2 at 4. Plaintiff alleges that he did most of the work, but the young white people got the credit. Eventually, Plaintiff, who is black, raised this dynamic with Ott. Plaintiff explained that he felt like he was being discriminated against—effectively, he was doing multiple people's work for the same amount of money, while his younger white colleagues took lengthy cigarette, lunch, and bathroom breaks with no discipline or oversight. Ott responded by, essentially, sanctioning the

white people's conduct. He told Plaintiff, "don't worry about them[,] just as long as the job gets done." *Id.* at 5. The problem, though, was that the job *was* getting done, at a cost to Plaintiff, who alleges that he was one man who did the work of three people. He continued to raise this issue with Ott, to little avail.

At some point, the company hired additional black workers, who also noted the disparity in work between black and white people—namely, that the black people did most of the work, while the white people took long breaks, did not pull their weight, and were never disciplined. Those black colleagues raised the issue with Ott, who fired them. Ott then began threatening to fire Plaintiff if he complained again. However, at no point did Ott discipline the white workers or otherwise address their lack of work.

Fearing retaliation, Plaintiff began measuring and documenting the work he was doing to prove that he was doing the most work. He received text messages from the company phone, which Ott had authority over, in which a white coworker called him a "punk." This coworker was poorly behaved and disrespectful to customers, but Ott did not discipline him. From October 2016 to April 2017, Ott began making more pointed comments to Plaintiff. Ott criticized the radio shows that Plaintiff listened to, made disparaging comments about President Barack Obama on the basis of his race, and commented favorably about President Obama's successor, stating "Our white President Trump is going to do a better job." These comments caused the area manager, Paul Bong, to tell Ott to leave on multiple occasions.

In March 2017, Packerland hired two new employees, a black man and a white man. Plaintiff trained both, and both men went out to work on

several jobs together. Unfortunately, the black worker ended up doing most of the work. When the black man complained to Ott that the white man was not doing any work, he was promptly terminated, and the white man was promoted *above* Plaintiff.

Plaintiff approached Ott to question the sagacity of this decision, particularly because the employee had only been on the job for about a week and had not demonstrated a particularly noteworthy work ethic. Plaintiff, in turn, had been working at the company for nearly two years, and had successfully trained many employees. Plaintiff told Ott that he felt this decision was the result of discrimination, to which Ott replied, "you can hand in your things and quit if you don't like it." Plaintiff did not say anything more and prepared his truck for the day.

At this point, Ott began a retaliation campaign against Plaintiff. Ott assigned Plaintiff multiple-man jobs to complete by himself and warned that if he failed to complete them alone, he would get fired. During this time, the younger white employees received small jobs and were permitted to work together to complete them. On April 19, 2017, Plaintiff took a day off because a tree fell on his car and destroyed power lines nearby. Even though this was the first time Plaintiff had missed a day of work in his entire employment at Packerland, and even though Ott never questioned or required an excuse from his white employees, Ott went to Plaintiff's house to confirm the damage.

Ott continued to give Plaintiff large jobs and inadequate resources; Plaintiff believes that Ott was trying to make the job so unpleasant that Plaintiff quit. In some instances, Ott would promise the client three trucks on the job, but would only send Plaintiff. This resulted in sales decreasing, as clients became dissatisfied with the service. In the first week of May,

Page 5 of 8
Case 2:22-cv-00279-JPS   Filed 05/25/22   Page 5 of 8   Document 4

Plaintiff continued doing three trucks' worth of work with only his truck. On Saturday, May 6, 2017, Plaintiff and his new, young, white coworker—who was in charge of the assignment—were working on a job in downtown Milwaukee when Ott decided to pay a visit. Plaintiff asked Ott to send more help, since the customer had expressed some dissatisfaction over the fact that there was only one truck on the job. Ott fired Plaintiff on the spot and demanded the keys to the truck. Plaintiff protested that he did not have another way back to the facility, where his car was. Ott told Plaintiff that if he took the truck, Ott would call the police and report the truck stolen. Plaintiff called his son for a ride. While his son was on his way, Ott changed his mind, gave Plaintiff his keys back, and told him to continue the job. Ott officially fired Plaintiff on Monday, May 15, 2017. Plaintiff alleges that he was terminated because of age and race discrimination by Ott. *Id.* at 13.

4. **ANALYSIS**

The screening standard in employment discrimination cases (and others) is lenient for pro se plaintiffs: "a plaintiff need only allege enough facts to allow for a plausible inference that the adverse action suffered was connected to [his] protected characteristics." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022). Here, Plaintiff has more than adequately alleged that he was discriminated against on the basis of his age and his race. He was routinely given more arduous assignments with less resources compared to his younger, white colleagues, and expected to do more work than they were for the same amount of money because he had "more experience"; he was retaliated against for speaking up about the unfairness while his younger white colleagues routinely eschewed work with no consequence; his younger white colleagues were promoted over him even though he had a better work record and more experience; and, when he

Page 6 of 8
Case 2:22-cv-00279-JPS   Filed 05/25/22   Page 6 of 8   Document 4

complained about the discrimination, he was subjected to Ott's racially charged comments and a home visit. Plaintiff has provided a copy of his right-to-sue letter from the Equal Employment Opportunity Commission. ECF No. 1-1 at 1. Plaintiff's complaint survives screening.

The Court notes, however, that there are no allegations in the complaint about Schultz. Therefore, that defendant will be dismissed.

## 5. CONCLUSION

For the reasons stated herein, Plaintiff may proceed on his claims for age discrimination and race discrimination.

Federal Rule of Civil Procedure 4(c)(3) provides that the Court must order service by the U.S. Marshals Service if a plaintiff is authorized to proceed *in forma pauperis* under 28 U.S.C. § 1915. *See Williams v. Werlinger*, 795 F.3d 759, 760 (7th Cir. 2015). Congress requires the U.S. Marshals Service to charge a fee for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for service by mail is $8.00 per item mailed; for process served personally by the U.S. Marshals Service, the fee is $65 per hour. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Although Congress requires the Court to order service by the U.S. Marshals Service because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. Thus, the Court will allow Plaintiff to elect, within **fourteen (14) days**, whether he desires service by the U.S. Marshals Service or whether he will obtain service of his own accord. If Plaintiff wants to effect service himself, he should simultaneously file a request for the Clerk of the Court to issue service packets to him.

Page 7 of 8
Case 2:22-cv-00279-JPS   Filed 05/25/22   Page 7 of 8   Document 4

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis*, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Michael Schultz be and the same is hereby **DISMISSED** from this action; and

**IT IS FURTHER ORDERED** that Plaintiff shall file, within **fourteen (14) days**, a notice indicating which method of service he desires.

Dated at Milwaukee, Wisconsin, this 25th day of May, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge