UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FRED L. PERRY,

                      Plaintiff,

v.

PACKERLAND RENT-A-MAT INC.
and JOHN OTT,

                      Defendants.

Case No. 22-CV-279-JPS

**ORDER**

**1.    INTRODUCTION**

On March 4, 2022, Plaintiff Fred L. Perry ("Plaintiff"), proceeding pro se, filed this action alleging that Defendants, Packerland Rent-A-Mat, Inc. ("Packerland") and John Ott ("Ott"), violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. §§ 621–634. ECF No. 1. The Court screened the complaint, granted Plaintiff's motion for leave to proceed without prepayment of the filing fee, and allowed Plaintiff's Title VII race discrimination claim and ADEA age discrimination claim to proceed as against Packerland and Ott (collectively, "Defendants").[1] ECF No. 4.

The matter now comes before the Court on Defendants' motion to dismiss Ott as a Defendant in this matter, filed January 17, 2023. ECF No. 30. The basis for Defendants' motion is that "Title VII and the ADEA do not allow for individual/supervisor liability." *Id.* at 1. The moving papers

---

[1] The Court dismissed Michael Schulz, who Plaintiff named in the complaint but against whom Plaintiff asserted no facts or allegations of wrongdoing. ECF No. 4 at 8.

indicate that counsel for Defendants met and conferred with Plaintiffs prior to filing this motion, as required by the Court's Pretrial Procedures Order. *Id.* at 2 (referencing ECF No. 9). Plaintiff at that time apparently indicated that he opposed such a motion. *Id.* ("Mr. Perry advised defense counsel that he thought a motion to dismiss Mr. Ott was a 'waste of time.'"). However, Plaintiff never filed any formal opposition brief, or anything at all in response to Defendants' motion.

Because Plaintiff's time for responding to the motion has long since passed, the Court treats the motion as unopposed. However, the analysis does not end there; the Court must reach the merits of the motion. *See Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021) (holding that a court may not grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the sole basis that it is unopposed, and must examine whether the movant has demonstrated entitlement to dismissal). Upon review of Defendants' arguments and the facts in this case, the Court is obliged to grant Defendants' motion. Ott will be dismissed as a Defendant from this case.

**2. LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476,

480 (7th Cir. 2016) (internal citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015) (internal citations and quotations omitted). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (internal citations and quotations omitted).

3.  **RELEVANT FACTS**[2]

In July 2015, Plaintiff began working part-time for the carpet-cleaning department of Packerland, a mat rental company. He had considerable prior experience and successfully trained two younger employees. Due to Plaintiff's efforts, the company recouped business they had previously lost. In September 2015, Packerland hired Plaintiff full time. In March 2016, Ott became Plaintiff's manager. By this time, Plaintiff had been working at the company for nearly ten months with zero complaints.

After Ott's promotion, Plaintiff noticed that the young white employees at Packerland—some of whom he had trained—were doing less work and "milking the clock." ECF No. 1-2 at 4. Plaintiff alleges that he did most of the work, but the young white people got the credit. Eventually, Plaintiff, who is black, raised this dynamic with Ott. Plaintiff explained that he felt like he was being discriminated against—effectively, he was doing

---

[2] On a motion to dismiss, the Court "consider[s] only the facts as they appear in the complaint." ECF No. 9 at 2. The Court adopts the facts as stated in its order screening Plaintiff's complaint. ECF No. 4.

multiple people's work for the same amount of money, while his younger white colleagues took lengthy cigarette, lunch, and bathroom breaks with no discipline or oversight. Ott responded by, essentially, sanctioning the white people's conduct. He told Plaintiff, "don't worry about them[,] just as long as the job gets done." *Id.* at 5. The problem, though, was that the job *was* getting done, at a cost to Plaintiff, who alleges that he was one man who did the work of three people. He continued to raise this issue with Ott, to little avail.

At some point, the company hired additional black workers, who also noted the disparity in work between black and white people—namely, that the black people did most of the work, while the white people took long breaks, did not pull their weight, and were never disciplined. Those black colleagues raised the issue with Ott, who fired them. Ott then began threatening to fire Plaintiff if he complained again. However, at no point did Ott discipline the white workers or otherwise address their lack of work.

Fearing retaliation, Plaintiff began measuring and documenting the work he was doing to prove that he was doing the most work. He received text messages from the company phone, which Ott had authority over, in which a white coworker called him a "punk." This coworker was poorly behaved and disrespectful to customers, but Ott did not discipline him. From October 2016 to April 2017, Ott began making more pointed comments to Plaintiff. Ott criticized the radio shows that Plaintiff listened to, made disparaging comments about President Barack Obama on the basis of his race, and commented favorably about President Obama's successor, stating "Our white President Trump is going to do a better job." These

comments caused the area manager, Paul Bong, to tell Ott to leave on multiple occasions.

In March 2017, Packerland hired two new employees, a black man and a white man. Plaintiff trained both, and both men went out to work on several jobs together. Unfortunately, the black worker ended up doing most of the work. When the black man complained to Ott that the white man was not doing any work, he was promptly terminated, and the white man was promoted *above* Plaintiff.

Plaintiff approached Ott to question the sagacity of this decision, particularly because the employee had only been on the job for about a week and had not demonstrated a particularly noteworthy work ethic. Plaintiff, in turn, had been working at the company for nearly two years, and had successfully trained many employees. Plaintiff told Ott that he felt this decision was the result of discrimination, to which Ott replied, "you can hand in your things and quit if you don't like it." Plaintiff did not say anything more and prepared his truck for the day.

At this point, Ott began a retaliation campaign against Plaintiff. Ott assigned Plaintiff multiple-man jobs to complete by himself and warned that if he failed to complete them alone, he would get fired. During this time, the younger white employees received small jobs and were permitted to work together to complete them. On April 19, 2017, Plaintiff took a day off because a tree fell on his car and destroyed power lines nearby. Even though this was the first time Plaintiff had missed a day of work in his entire employment at Packerland, and even though Ott never questioned or required an excuse from his white employees, Ott went to Plaintiff's house to confirm the damage.

Ott continued to give Plaintiff large jobs and inadequate resources; Plaintiff believes that Ott was trying to make the job so unpleasant that Plaintiff quit. In some instances, Ott would promise the client three trucks on the job, but would only send Plaintiff. This resulted in sales decreasing, as clients became dissatisfied with the service. In the first week of May, Plaintiff continued doing three trucks' worth of work with only his truck. On Saturday, May 6, 2017, Plaintiff and his new, young, white coworker—who was in charge of the assignment—were working on a job in downtown Milwaukee when Ott decided to pay a visit. Plaintiff asked Ott to send more help, since the customer had expressed some dissatisfaction over the fact that there was only one truck on the job. Ott fired Plaintiff on the spot and demanded the keys to the truck. Plaintiff protested that he did not have another way back to the facility, where his car was. Ott told Plaintiff that if he took the truck, Ott would call the police and report the truck stolen. Plaintiff called his son for a ride. While his son was on his way, Ott changed his mind, gave Plaintiff his keys back, and told him to continue the job. Ott officially fired Plaintiff on Monday, May 15, 2017. Plaintiff alleges that he was terminated because of age and race discrimination by Ott. *Id.* at 13.

4. ANALYSIS

    4.1 Title VII Claim

Defendants argue Ott should be dismissed because Ott, as Plaintiff's direct supervisor at the time of the alleged discrimination, was an agent of the employer and therefore not subject to liability under Title VII. The Court agrees.

Under Title VII, an "employer" may not "discharge any individual, or otherwise . . . discriminate against any individual with respect to his compensation, terms, condition, or privileges or employment, because of

such individual's race[.]" 42 U.S.C. § 2000e-2(a)(1). An "employer" for purposes of the statute is "a person engaged in an industry affecting commerce" which has fifteen or more employees. 42 U.S.C. § 2000e(b).

"Title VII authorizes suit *only* against the employer. Individual people who are agents of the employer cannot be sued as employers under Title VII." *Passanti v. Cook County*, 689 F.3d 655, 662 n.4 (7th Cir. 2012). "The Court of Appeals for the Seventh Circuit has held repeatedly that Title VII does not authorize suits filed against supervisors in their individual capacities." *Salas v. Wis. Dep't of Corr.*, No. 05-C-399-C, 2006 WL 1049469, at *4 (W.D. Wis. Apr. 17, 2006) (citing *Williams v. Banning*, 72 F.3d 552, 553–54 (7th Cir. 1995) and *Robinson v. Sappington*, 351 F.3d 317, 332 n.9 (7th Cir. 2003)). "[M]ost cases rejecting individual liability assume that under the doctrine of *respondeat superior*, the victim can sue [his] employer instead." *Williams*, 72 F.3d at 554.

It is undisputed that Ott was, at all times relevant to this action, Plaintiff's supervisor at Packerland. In this capacity, he was acting as Packerland's agent. Ott cannot be sued in his individual capacity for an alleged Title VII violation and therefore is not properly named as a party and Plaintiff has not stated a claim against him. *Passanti*, 689 F.3d at 622 n.4; *cf. Henige v. Bd. of Regents of Univ. of Wis. Sys.*, No. 20-CV-6, 2021 WL 510403, at *8 (E.D. Wis. Feb. 11, 2021); *Haltek v Village of Park Forest*, 864 F. Supp. 802, 804 (N.D. Ill. 1994); *Gastineau v. Fleet Mortg. Corp*, 884 F. Supp. 310, 313 (S.D. Ind. 1994).

### 4.2 ADEA Claim

Similarly, Defendants argue Ott should be dismissed because Ott, as Plaintiff's direct supervisor at the time of the alleged discrimination, was

an agent of the employer and therefore not subject to liability under the ADEA. The Court agrees.

Under the ADEA, an "employer" may not "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age[.]" 29 U.S.C. § 623(a)(1). An "employer" for purposes of the ADEA is "a person engaged in industry affecting commerce who has twenty or more employees." 29 U.S.C. § 630(b). "Under the principle of *respondeat superior*, employers may be held responsible under the ADEA for discriminatory actions taken by supervisors against lower level employees." *Salas*, 2006 WL 1049469, at *2. However, as with Title VII, the ADEA "does not authorize suits brought directly against individual supervisors." *Id.* (citing *U.S. EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir. 1995)).

As discussed above, it is undisputed that Ott was Plaintiff's supervisor while they both worked at Packerland. Ott cannot be sued in his individual capacity for an alleged ADEA violation and therefore is not properly named as a party and Plaintiff has not stated a claim against him. *See id.* (dismissing a plaintiff's "former supervisors" as defendants to his ADEA claim).

5. **CONCLUSION**

Because neither of Plaintiff's two claims is legally tenable as to Ott, Defendants' motion to dismiss as to Ott will be granted, and Ott will be dismissed as a Defendant in his individual capacity. This does not affect the pendency of Plaintiff's Title VII and ADEA claims as to Packerland.

Accordingly,

**IT IS ORDERED** that Defendants Packerland Rent-A-Mat, Inc.'s and John Ott's motion to dismiss as to Defendant John Ott, ECF No. 30, be and the same hereby is **GRANTED**; and

**IT IS FURTHER ORDERED** that John Ott be and the same is hereby **DISMISSED** as a Defendant in his individual capacity.

Dated at Milwaukee, Wisconsin, this 22nd day of March, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge